IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| EFRAIN ACEVEDO, | § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:14-CV-183 |
| | § | |
| JOHNY ABRAHAM, *et al.*, | § § | |
| Defendants. | § § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Efrain Acevedo, a prisoner in the custody of the Texas Department of Criminal Justice ("TDCJ"), has filed a *pro se* civil rights complaint and is proceeding *in forma pauperis* (Dkt. 1, Dkt. 10). He has sued two defendants under 42 U.S.C. § 1983, bringing claims of Constitutionally deficient medical care.

The Court requested a *Martinez* report[1] from the Texas Attorney General's office, which the Attorney General's office provided (Dkt. 16). The Court construed the *Martinez* report as a motion for summary judgment and notified Acevedo of that construction (Dkt. 17). Acevedo responded (Dkt. 23 and Dkt. 28). The Court will also consider the factual allegations in Acevedo's original complaint to be part of the summary judgment record because Acevedo declared under penalty of perjury that the facts set forth in the complaint are true and correct (Dkt. 1 at pp. 6–7). *See Hart v.*

---

[1] *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1987); *see also Cay v. Estelle*, 789 F.2d 318, 323 & n.4 (5th Cir. 1986) (discussing the utility of a *Martinez* report).

*Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."); *see also Davis v. Hernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[F]ederal courts, this one included, have a traditional disposition of leniency toward *pro se* litigants.") (quotation marks omitted).

After reviewing all of the evidence submitted, the parties' briefing, and the applicable law, the Court concludes that the defendants' motion for summary judgment must be **GRANTED** for the reasons that follow.

## I. BACKGROUND

Acevedo claims that he was diagnosed with asbestosis in 2011 (Dkt. 1 at p. 3). The defendants here are Johny Abraham, who is a nurse practitioner, and Dr. Patrick Strunk, who is the former practice manager at the Terrell Unit, where Acevedo is incarcerated (Dkt. 1 at p. 2). Acevedo alleges that the defendants have ignored his prior asbestosis diagnosis and allowed the disease to worsen by prescribing him "non-aspirin and cold busters which is not proper treatment for [his] kind of illness" (Dkt. 1 at p. 3).

## II. THE PLRA, SUMMARY JUDGMENTS, AND QUALIFIED IMMUNITY

### A. The PLRA

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"). Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which

relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party, like Acevedo, proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

Acevedo proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' *Estelle* [*v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). The Supreme Court has clarified that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. Rule 56

The defendants have filed a *Martinez* report, which the Court has construed as a motion for summary judgment. Federal Rule of Civil Procedure 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Id.* at 322–23.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

If the movant meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material

fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from those facts must be reviewed in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (citation and quotation marks omitted). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the non-movant must present specific facts which show the existence of a genuine issue concerning every essential component of its case. *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F.Supp.2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *Smith v. Southwestern Bell Tel. Co.*, 456 Fed. App'x 489, 492 (5th Cir. 2012) ("[W]e have repeatedly held that self-serving statements, without more, will not defeat a motion for summary judgment, particularly one supported by plentiful contrary evidence."); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Lastly, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). Although Acevedo is proceeding pro se, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a pro se party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically

refer to evidence in the summary judgment record in order to put that evidence properly before the court. *Outley v. Luke & Associates, Inc.*, 840 F.3d 212, 217 (5th Cir. 2016).

### C. Qualified Immunity

The defendants' motion invokes qualified immunity (Dkt. 16 at p. 3). In civil rights actions such as this one where the non-movant is suing government officials, the issue of qualified immunity alters the summary judgment analysis. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). If the qualified immunity defense is raised, the burden shifts to the non-movant to rebut it. *Id.* All inferences are drawn in the non-movant's favor. *Id.*

The qualified immunity analysis is complex and intensely fact-specific. The Court begins by applying the two prongs of the qualified immunity defense, though the Court may analyze the prongs out of order. The first prong is the question of whether the official's conduct violated a Constitutional right of the plaintiff. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). The second prong is the question of whether the Constitutional right was clearly established at the time of the violation. *Id.* For the right to have been clearly established for purposes of qualified immunity, the contours of the right must have been sufficiently clear that a reasonable official would have understood that what he was doing violated that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the official's actions must have been readily apparent from sufficiently similar situations, though there need not have been commanding precedent holding the very action in question unlawful. *Id.* at 236–37.

If the plaintiff satisfies both prongs—i.e., if the official's actions violated a clearly established Constitutional right—the Court then asks whether qualified immunity is nevertheless appropriate because the official's actions were objectively reasonable in light of law that was clearly established at the time of the disputed action. *Callahan*, 623 F.3d at 253. Whether an official's conduct was objectively reasonable is a question of law for the Court, not one of fact for the jury. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). An official's actions must be judged in light of the circumstances that confronted him and the facts that were available to him, without the benefit of hindsight. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989); *Callahan*, 623 F.3d at 253; *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993).

Qualified immunity "establishes a high bar"—*Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013)—that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Essentially, a plaintiff must demonstrate that no reasonable official could have believed that his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).

### III. PRISONERS AND MEDICAL CARE

Acevedo seeks relief under 42 U.S.C. § 1983 for what he says was Constitutionally deficient medical care. A prisoner may succeed on a claim under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates "deliberate indifference to serious medical needs" on the part of prison officials or other state actors. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The conduct alleged must "constitute an unnecessary and wanton infliction of pain" or "be repugnant to the conscience of

mankind." *Id.* at 104–06 (quotation marks omitted). A prison official acts with the requisite deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

The deliberate-indifference test has both an objective prong and a subjective one. The prisoner must first prove objective exposure to a substantial risk of serious harm. *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). To then prove subjective deliberate indifference to that risk, the prisoner must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the prisoner's health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed. *Farmer*, 511 U.S. at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). This is an "extremely high standard to meet"—*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)—and, absent exceptional circumstances, it is not met by an incorrect diagnosis, unsuccessful medical treatment, acts of negligence, medical malpractice, or a prisoner's disagreement with his medical treatment. *Id.*; *Gobert*, 463 F.3d at 346. Rather, the prisoner must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quotation marks omitted).

"Deliberate indifference is not established when medical records indicate that the plaintiff was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793

F.3d 493, 500 (5th Cir. 2015) (quotation marks and brackets omitted). The Constitution does not require that prisoners receive optimal care, and the fact that a prisoner's medical treatment "may not have been the best that money could buy" is insufficient to establish a Constitutional claim. *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *see also Gobert*, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978) ("[The] plaintiff stated that he had not received 'optimum' or 'best' medical treatment. Were this the legal standard, a trial of the issues might be required.").

At bottom, the deliberate-indifference standard is designed to be stringent enough to separate acts or omissions that amount to intentional choices from those that are merely unintentionally negligent oversights. *Southard v. Tex. Bd. Of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997). To that end, it draws on the test for "subjective recklessness" used in criminal law, which "generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware" and does not permit such a finding based on mere "failure to alleviate a significant risk that [the person] should have perceived but did not[.]" *Farmer*, 511 U.S. at 836–40.

## IV. ACEVEDO'S CLAIMS

Acevedo claims in his original complaint that the defendants have ignored his prior asbestosis diagnosis and allowed the disease to worsen by prescribing him "non-aspirin and cold busters which is not proper treatment for [his] kind of illness" (Dkt. 1 at p. 3). Citing to a book about mesothelioma, he asserts that his condition "requires narcotics" (Dkt. 23 at p. 9) (underlining in original).

Acevedo has not carried his burden of rebutting the qualified immunity defense as to either of the defendants. Actually, it is unclear why Acevedo has singled out these two medical providers, as he has been treated by numerous providers during his incarceration, none of whom has found any evidence of asbestosis. TDCJ and University of Texas Medical Branch ("UTMB") medical providers *have* diagnosed Acevedo with chronic obstructive pulmonary disease ("COPD"), and he has received treatment for that condition, including prescriptions for Proventil and Spiriva inhalers (Dkt. 16-3 at p. 9). Confronted with these facts, Acevedo maintains, as he has in the past, that his COPD must be treated as asbestos-related because it stems from his being exposed to asbestos while working for a demolition company for a one-year period spanning 2010 and 2011 (Dkt. 16-4 at pp. 28, 30; Dkt. 28 at pp. 2–3, 5). However, a pulmonary disease specialist at UTMB concluded that Acevedo's "[s]hort term potential exposure to asbestos [is] unlikely to be [the] cause of [his] symptoms" (Dkt. 16-4 at pp. 27–28). Moreover, Acevedo's medical records indicate that he has undergone at least seven chest x-rays and a CT scan of his chest since he entered TDCJ custody (Dkt. 16-1 at pp. 18, 24; Dkt. 16-3 at pp. 11, 65, 81, 109; Dkt. 16-4 at pp. 3–4, 9–10; Dkt. 16-5 at p. 2). Not one of those tests has been able to confirm Acevedo's claim that he has an asbestos-related illness; nor have the myriad other evaluations by a multitude of medical professionals that are described in the summary judgment record. Nevertheless, Acevedo, who entered TDCJ custody in December of 2012, insists that he was diagnosed with asbestosis in 2011 by a Dr. Sumeru Mehta at Methodist Hospital in San Antonio (Dkt. 23 at p. 9). But Acevedo presents no evidence of this diagnosis apart from his own statement in an unsworn

pleading,[1] and in any event his medical records indicate that the defendants obtained his charts from Methodist Hospital and found in those charts "no evidence of any lung complication" and "[n]o documentation of asbestosis" (Dkt. 16-3 at pp. 92–95). In short, despite Acevedo's claims to both his medical providers and this Court that he suffers from some asbestos-related illness, there is absolutely no competent evidence in the summary judgment record that such is the case.

What Acevedo's medical records do contain is evidence of past drug dependency—which the Court finds noteworthy given Acevedo's insistence that his condition needs to be treated with narcotics—as well as documentation of erratic, manipulative behavior and repeated flouting of prescribed treatment and medical advice. Acevedo has told medical providers that, "when [he] was 12 years old, the Court sent [him] to a State Hospital because [he] used to sniff spray paint" (Dkt. 16-3 at p. 104). Acevedo has further admitted that he "smoked marijuana daily out of a bong for over 10 ye[a]rs" (Dkt. 16-3 at p. 61). Additionally, psychiatric records indicate that Acevedo "has historically poor medication compliance and has presented as manipulative in the past" (Dkt. 16-3 at p. 103); and multiple entries in Acevedo's medical chart bear those observations out. The chart notes Acevedo's noncompliance with medical advice and treatment regimens on several occasions (Dkt. 16-1 at p. 29; Dkt. 16-3 at pp. 64, 77, 105, 106), including one instance in which Acevedo failed to refill his inhalers for four months (Dkt. 16-3 at p. 90) and another in which he refused further treatment after TDCJ medical

---

[1] "Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n. 12 (5th Cir. 1991).

providers detected possible colon or rectal cancer (Dkt. 16-3 at p. 15). Acevedo has also attempted, on at least one occasion, to convince a medical provider to lie on his chart (Dkt. 16-3 at p. 59);[2] and he once terminated an electrocardiogram ("EKG") because the nurse who was administering it did not smile at him when he asked her to (Dkt. 16-3 at p. 42).[3] On another occasion, Acevedo claimed to be suffering from partial facial paralysis; the doctor at UTMB who evaluated Acevedo diagnosed him with "[p]sychophysiological exaggeration" after noting that "[Acevedo's] story was inconsistent and all his medical workup was negative" (Dkt. 16-4 at p. 3).

At bottom, having considered all of the competent evidence in the summary judgment record, the Court concludes that the defendants are entitled to qualified immunity. There is no proof that either prong of the deliberate-indifference test has been met. There is no evidence that the defendants refused to treat Acevedo, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Acevedo's medical providers diagnosed him with COPD, and they are treating him (as best they can, given his frequent refusal to cooperate with them) for COPD. Acevedo believes that he has asbestosis and claims to have been diagnosed with it before his incarceration, but multiple tests have failed to confirm that belief and he has presented no evidence to

---

[2] "[Acevedo] did not cough or sneeze while in clinic. [Acevedo] wants this Nurse to Chart he was SOB [short of breath] and was coughing up blood[;] none of this was observed" (Dkt. 16-3 at p. 59).

[3] "[Acevedo] removed his shirt for EKG and proceeded to state 'Are you not going to smile at me'. I responded with 'I need to perform this EKG test'. [Acevedo] became upset and refused treatment stating 'You are being rude, I am OK now'. [Acevedo] left medical without signing a refusal form" (Dkt. 16-3 at p. 42) (some capitalization omitted).

support his claim of a free-world diagnosis. The Court will grant the defendants' motion for summary judgment.

While the defendants' motion for summary judgment was pending, Acevedo filed a motion for leave to amend his complaint to add state-law claims for medical malpractice (Dkt. 23). The Court notes that it is denying that motion because the amendment would be futile in that, even if the Court were to allow the amendment, it would decline to exercise supplemental jurisdiction over the state-law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating that futility of the amendment sought is a valid reason to deny leave to amend). In the Fifth Circuit, the "general rule is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial[.]" *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (quotation marks omitted). This case presents no reason to deviate from that general rule.

## V. **CONCLUSION**

Based on the foregoing, the Court **ORDERS** as follows:

1. The defendants' motion for summary judgment (Dkt. 16) is **GRANTED**, and all claims against them are dismissed with prejudice.

2. The plaintiff's motion for leave to amend (Dkt. 23) is **DENIED** on the basis of futility. Any other pending motions are **DENIED** as moot.

The Clerk is directed to provide a copy of this order to the parties and to *amicus* counsel.

SIGNED at Galveston, Texas, on December 5, 2017.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE